**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JEFFSON C.,

Petitioner,

v.

WARDEN, *California City Detention Facility*,

Respondent.

No. 1:26-cv-08343 JLT EGC (HC)

A-Number: 244-428-104

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS, GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE AND DIRECTING CLERK OF COURT TO CLOSE CASE

(Docs. 1, 9)

Petitioner is a citizen of Haiti who was previously released on humanitarian parole under 8 U.S.C. § 1182(d)(5). (Doc. 8-1 at 1.) His Parole was valid until March 5, 2026. (*Id*. at 2.) According to documentation submitted by Respondents, he has no criminal history. (*Id*. at 3.) On September 21, 2026, he was detained by ICE in Newark, New Jersey (*id*.) and later transferred to this jurisdiction. (*See* Doc. 1.)

On October 13, 2026, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) On October 20, 2026, the magistrate judge issued findings and recommendations that the Petition be granted and Respondents be directed to immediately release Petitioner. (Doc. 9.) On October 22, 2026, Respondents filed timely objections that incorporate arguments they made in opposition to the Petition. (Doc. 10.)

According to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including Respondent's objections, the Court concludes the findings and recommendations are supported by the record and proper analysis. Respondents argue that because Petitioner was allowed to enter the United States on humanitarian parole, he remains at the "threshold of entry" and therefore is entitled only to those procedural protections afforded by statute, citing the Ninth Circuit's recent ruling in *Padilla v. U.S. Immigration & Customs Enforcement*, --- F.4th ---, No. 24-2801, 2026 WL 2822044 (9th Cir. Sept. 21, 2026). Contrary to Respondents' position, *Padilla* is consistent with the magistrate judge's recommendation.

*Padilla* concerned a class of individuals who were apprehended within the interior of the United States, screened for expedited removal under 8 U.S.C. § 1225(b), found to have a credible fear of persecution or torture, and then placed in regular removal proceedings to adjudicate their asylum claims. 2026 WL 282204 at *2. The government took the position that these individuals could be detained without bond hearings or any alternative individualized process to justify the necessity of their continued detention. *Id*. The Ninth Circuit rejected the government's argument, applying a multi-step analysis. First, *Padilla* explained that application of the Due Process Clause "generally turns on whether th[e] individual is 'within the territory of the United States." *Id.* at *12 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)).

*Padilla* acknowledged the entry fiction doctrine:

> There is a narrow exception to the territoriality rule: the "entry fiction." Where the entry fiction applies, "aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, [but] such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc) (emphasis added) (citation omitted); *see* [*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1954)] (explaining that "such temporary harborage ... [does] not affect[ ] an alien's status").

*Id*. at *12. But, the Ninth Circuit carefully parsed existing caselaw regarding the entry fiction, explaining that "[t]oday, the entry fiction encompasses those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a

determination of their admissibility. Such individuals are 'treated as if stopped at the border' with respect to certain legal rights." *Padilla*, 2026 WL 282204 at *13 (emphasis added); *see also id*. at *14 (*Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020)'s "careful limitation of its due process holding to those apprehended on the 'threshold of initial entry' was not an invitation to the government to remove constitutional due process protections from everyone who meets the statutory criteria for expedited removal as it now exists—or as it may be expanded by statute to cover all noncitizens who enter illegally.").

The Ninth Circuit next discussed "entry versus admission" to explain why individuals who had already physically entered the United States, even if not legally admitted, are entitled to due process under the Fifth Amendment in light of a long line of Supreme Court precedent. *Padilla*, 2026 WL 282204 at *15 (*citing Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."). In the context of this discussion, the Ninth Circuit provided the following reasoning:

> The government insists that *Thuraissigiam* undid—without so acknowledging—this extensive authority. It so contends even though *Thuraissigiam* nowhere suggested that it was overruling any Supreme Court precedents, and never made any broad statements affecting the due process rights of all illegal entrants generally, as opposed to those encountered "at the threshold of initial entry." 591 U.S. at 107. So that there is no uncertainty, we will say it once more: except for the extremely narrow category of people covered by the entry fiction, every person in the United States is entitled the Fifth Amendment's guarantee of due process, regardless of their citizenship or legal status. We cannot, as the government urges, circumvent this bedrock principle by completely reinventing the entry fiction such that every person who has not been legally admitted is stripped of their due process rights. The bond hearing class includes noncitizens apprehended far beyond the threshold of entry covered by *Thuraissigiam*. It is therefore made up largely of individuals who, before and after *Thuraissigiam*, have full procedural due process rights under the Fifth Amendments.

*Id*. (emphasis added). The government argues that Petitioner falls within that "extremely narrow category of people covered by the entry fiction" and thus his Petition should be denied or

dismissed. (Doc. 8 at 3.)

The Court does not read *Padilla* or related Supreme Court precedent as Respondents do. Crucially, *Padilla* explained that the entry fiction doctrine applies in "an admission, not a detention, case." 2026 WL 282204 at *19. For that reason, as well as because the plaintiffs in *Padilla* were not all subject to the entry fiction doctrine, the Ninth Circuit concluded that the doctrine "has no application here, the government's fervent pleas for its vast expansion notwithstanding." *Id*. This is because "[a]dmission and detention occupy fundamentally different positions in our legal order"; while the "political branches" possess "plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Id*. at *16.

Respondents insist that notwithstanding this language in *Padilla*, the entry fiction applies to detention cases, citing *Mezei*, 345 U.S. at 212 (1954), and *Barrera–Echavarria*, 44 F.3d 1441. In *Mezei*, the Supreme Court applied the entry fiction doctrine to find that a noncitizen could be detained at Ellis Island indefinitely after the United States refused him re-entry and no other country would repatriate him. *See generally Mezei*, 345 U.S. 206. Though *Mezei* addressed detention, it did so in the context of an individual who was being entirely excluded from the United States (i.e., had not been released into the interior of the country). *See id.* at 213 ("Neither respondent's harborage on Ellis Island nor his prior residence here transforms this into something other than an exclusion proceeding."); *but see Jean v. Nelson*, 727 F.2d 957, 970 (11th Cir. 1984) ("*Mezei* thus did not concern admission or exclusion *per se*, but the rights of an alien when challenging his continued detention pending the enforcement of an exclusion order that has been entered against him . . . With regard to the key issue here—whether the grant or denial of parole is an integral part of the admissions process—*Mezei* is fully in accord with other, less controversial precedents.").

A similar, though not identical, situation existed in *Barerra-Echavarria*, which addressed a habeas petition brought by a Mariel Cuban migrant who had been detained by federal immigration authorities for almost a decade, save for two brief periods (upon his initial arrival in

1980 and then again in 1992) when he had been at liberty on immigration parole and/or in state criminal custody. *See* 44 F.3d at 1442–43. Barrera-Echavarria argued that the Attorney General "lack[ed] statutory and constitutional authority to detain him indefinitely when it is clear that his deportation cannot be effected within the foreseeable future," because Cuba would not repatriate him. *Id*. at 1443. The Ninth Circuit applied *Mezei* to find that *Barrera-Echavarria* had "no constitutional right to immigration parole and, therefore, no right to be free from detention pending his deportation." *Id*. at 1448. "Because excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Id*. at 1450. Crucially, even though Barrera-Echavarria had been at liberty on humanitarian parole for brief periods, he was not challenging the government's right to revoke his parole, likely because those revocations occurred after criminal convictions. *See Barrera-Echavarria v. Rison*, 21 F.3d 314, 321 (9th Cir. 1994) (Sneed, J. dissenting), *majority opinion vacated on reh'g on other grounds*, 44 F.3d 1441 (9th Cir. 1995).

This case is not *Mezie* or *Barrera-Echavarria* for a simple but important reason: Petitioner is alleging that after he was released into the interior of the United States, his humanitarian parole was arbitrarily revoked. In other words, this case involves a due process challenge to re-detention brought by an individual who was at the time of the re-detention physically present inside the United States. None of the above cases—*Padilla*, *Mezie*, or *Barrera-Echavarria*—demand that this Court disregard the long line of Supreme Court precedent, discussed in *Padilla*, 2026 WL 2822044, at *11 (citing *Wong Wing*, 163 U.S. at 238), holding that individuals who are present in the United States are entitled to due process protections. As *Padilla* explained in rejecting the government's argument that "if a statute provides [a noncitizen] may be ousted from the country without any procedural protections, then they can be":

> The government's boundless proposition is nowhere to be found in *Thuraissigiam*. *Thuraissigiam* does not anywhere suggest that the entry fiction has swallowed up the *Wong Wing* principle that the Due Process clause applies to all 'persons,' including those illegally present in this country. Nor could it have so held. "The right to due process is conferred, not by legislative grace, but by constitutional guarantee." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

(1985) (citation modified).

*Padilla*, 2026 WL 2822044, at *14. Confining *Mezie* and *Barrera-Echavarria* to their facts is consistent both with the distinction *Padilla* drew between admissions and detention in relation to the entry fiction, *id*. at *16–19, and with *Padilla's* clear indication that the entry fiction bars detention-related due process claims for only an "extremely narrow category of people." *Id*. at *15.[1]

For all these reasons, because Petitioner was released on humanitarian parole, his "legal status regarding admission reverted to that of an arriving noncitizen once [that] parole expired," but the Due Process clause continued to require constitutionally adequate procedures surrounding [his] detention." *Vasquez v. Hernandez*, No. 2:26-CV-02873-TMC, 2026 WL 2936770, at *2 (W.D. Wash. Sept. 30, 2026) (emphasis added); *see also Diaz-Alfonso v. Warden*, No. 1:26-CV-07682-DC-CKD, 2026 WL 3060522, at *1 (E.D. Cal. Oct. 13, 2026) (finding noncitizen released on humanitarian parole was entitled to immediate release notwithstanding *Padilla*); *Kleber Vasquez v. Hernandez*, No. 2:26-cv-02873-TMC, 2026 WL 2936770, at *2 (W.D. Wash. Sep. 30, 2026) (finding noncitizen released on humanitarian parole retained due process rights regarding confinement even after *Padilla*).

The Court further agrees with the magistrate judge that Petitioner's re-detention without pre-deprivation process violated his due process rights and that he falls into the category of individuals for whom immediate release has been deemed the appropriate remedy, notwithstanding the expiration of his parole. *See Jimenez Peraza v. Mullin*, No. 1:26-CV-06230-JLT-EPG, 2026 WL 2905865, at *1 (E.D. Cal. Sept. 28, 2026) (finding release the appropriate remedy even though petitioner's humanitarian parole expired, because he "has committed no crime nor violated the conditions of his parole"); *Quiala-Fonseca v. Blanche*, No. 1:26-CV-05818-JLT-EGC, 2026 WL 2268786, at *1 (E.D. Cal. Aug. 6, 2026) (same).[2]

---

[1] This is also consistent with the out-of-circuit district court decision cited by Respondents (Doc. 8 at 3), *Kosnikov v. Warden, Folkston Ice Processing Center*, No. CV 525-213, 2026 WL 2909534 (S.D. Ga. Sept. 28, 2026) (finding that the entry-fiction barred Petitioner's due process claim as to detention), which concerned an individual held continuously in immigration detention since presenting himself at a port of entry.

[2] This case is distinguishable from *Kleber Vasquez*, 2026 WL 2936770, at *2, which found that although a

Thus, the Court **ORDERS**:

1. The findings and recommendations issued on October 20, 2026 (Doc. 9) are **ADOPTED IN FULL**.
2. The petition for writ of habeas corpus is **GRANTED**.
3. Respondents **SHALL** immediately release Petitioner from their custody on the conditions, if any, he was subject to prior to their detention on September 21, 2026 and that Respondent be enjoined and restrained from re-detaining Petitioner for any purpose, absent exigent circumstances, without providing Petitioner notice and a pre-detention hearing before an immigration judge;
4. The Clerk of Court is directed to serve the California City Detention Center with a copy of this Order.
5. The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: October 26, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE

humanitarian parolee was entitled to due process protections, DHS did not violate her due process rights because she was "promptly" re-detained after her parole terminated.